1
2
3
4
5
6
7
8
9

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

10
11
12
13
14
15

| | |
|---|---|
| PAYMAN BORHAN, | ) Case No. CV 06-06278-CAS (SH) |
| Petitioner, | ) |
| | ) FINDINGS AND CONCLUSION |
| v. | ) FOLLOWING EVIDENTIARY HEARING |
| | ) |
| RON DAVIS, Warden, | ) |
| | ) |
| Respondent. | ) |

For the reasons stated below, petitioner is entitled to equitable tolling and therefore his Petition is not untimely.

## I.  PROCEEDINGS

Petitioner, a prisoner in the custody of the California Department of Corrections and Rehabilitation, challenges his state court convictions for committing a lewd act on a child in California Superior Court, Los Angeles County (Case No. B166670).

On September 22, 2006, petitioner (through counsel) filed a Petition for Writ of

Habeas Corpus by a Person in State Custody ("Petition") in the United States District Court for the Southern District of California.  The Petition subsequently was transferred to this Court.  In his Petition, petitioner alleges the following claims: (1) The trial court's denial of petitioner's motion to substitute retained counsel violated petitioner's Sixth Amendment rights; (2) The trial court's admission of propensity evidence under California Evidence Code § 1108 violated petitioner's rights to due process and a fair trial; (3) Petitioner received ineffective assistance of counsel based on his trial counsel's failure to interview and/or call witnesses, inhibiting petitioner's ability to seek new counsel, and advising petitioner not to testify; (4) The trial court's failure to sua sponte instruct the jury on the lesser included offense of annoying or molesting a child violated petitioner's rights to due process and a fair trial; and (5) Petitioner's sentence constituted cruel and unusual punishment under the Eighth Amendment.  (Petition at 5-6).

Respondent filed an Answer to the Petition on October 23, 2006.  Petitioner subsequently filed a Motion to Stay The Proceedings Pending Exhaustion of State Court Remedies ("Motion to Stay Proceedings"), wherein petitioner requested that the Court stay the Petition while petitioner exhausted the second and fourth claims alleged in the Petition.  In a Minute Order issued on November 16, 2006, the Court denied the Motion to Stay Proceedings without prejudice to petitioner to refiling after the resolution of any issues related to the filing of an amended petition.  (The Court had rejected for filing a brief submitted by petitioner that was submitted after respondent had filed an Answer, and which alleged a claim not alleged in the Petition).

After receiving extensions of time, on July 6, 2007, petitioner filed a Motion to Amend the Petition, accompanied by a proposed First Amended Petition ("First Amended Petition") and a supporting Brief.  In addition to the claims alleged in the original Petition, the proposed First Amended Petition alleged that petitioner received ineffective assistance of counsel based on trial counsel's and appellate counsel's failure to raise the instructional error claim.  (First Amended Petition at 5-6; Brief at 9-44).

Respondent filed an opposition to petitioner's motion to amend ("Opposition") on

July 24, 2007.  In the Opposition, respondent contended that the motion to amend should be denied because the original Petition is barred by the one-year statute of limitations. (See Opposition at 7-12).  Respondent alternatively contended that the motion to amend should be denied because the new claim alleged in the proposed First Amended Petition does not "relate back" to the claims alleged in the original Petition and therefore would be time barred.  (See Opposition at 12-18).  Respondent alternatively contended that the motion to amend should be denied because the proposed First Amended Petition contains unexhausted claims.  (See Opposition at 18-22). Respondent alternatively contended that the motion to amend should be denied because petitioner's undue delay had prejudiced respondent.  (See Opposition at 23-25).

Petitioner filed a Reply in Support of the Motion to Amend Petition ("Reply") on August 16, 2007.

The Court issued a Report and Recommendation on August 22, 2007.  Petitioner filed Objections to the Report and Recommendation ("Objections") on September 4, 2007.  Respondent filed a Reply to the Objections ("Reply to Objections") on September 20, 2007.  In a Minute Order issued on September 24, 2007, the Court ordered petitioner to file: (1) A declaration from petitioner's counsel stating on what date she was retained by petitioner; and (2) Any additional declaration concerning petitioner's reliance, if any, on Abela v. Martin, 348 F.3d 164 (6th Cir. 2003)(en banc), cert. denied, 541 U.S. 1070 (2004) ("Abela").[1]  Petitioner filed a Declaration of Lisa M. Bassis ("Bassis Declaration") on October 3, 2007.

In a Minute Order issued on October 12, 2007, the Court found that: (1) based on petitioner's counsel's statements in her declaration about the date of petitioner's retention of her services (i.e., mid-September 2005), and about her reliance on Abela, supra "in her calculation and calendering of the applicable limitations period" for the filing of the original Petition, petitioner was entitled to equitable tolling for the 90-day period after the

---

[1]     Abela was overruled by Lawrence v. Florida, 549 U.S. 327, 127 S.Ct. 1079, 166 L.Ed.2d 924 (2007).

California Supreme Court's denial of petitioner's first habeas petition, the statute of limitations did not begin to run until September 7, 2005, and petitioner had until September 7, 2006 to timely seek federal habeas relief; and (2) based on the fact that the original Petition was lodged in the United States District Court for the Southern District of California on September 5, 2006, that the original Petition was filed on a timely basis. Accordingly, the Court vacated its August 22, 2007 Report and Recommendation.[2]

On October 19, 2007, respondent filed a "Notice of Motion and Motion for Review and Reconsideration of Magistrate Judge's October 19, 2007 Minute Order," which the Court construed as a Supplemental Reply to the Objections ("Supplemental Reply"). In light of respondent's Supplemental Reply, the Court issued a Minute Order on October 23, 2007, (a) vacating its October 12, 2007 Minute Order (the August 2007 Report and Recommendation remained in effect), and (b) ordering petitioner to file a response to the Supplemental Reply. On November 28, 2006, petitioner filed a Response to the Supplemental Reply ("Response to Supplemental Reply"). On January 10, 2008, respondent filed a Reply to Petitioner's Response to Supplemental Reply ("Reply to Petitioner's Response").

On January 15, 2008, the Court issued a Final Report and Recommendation, recommending the dismissal of the action based on the untimeliness of the Petition.

In his Objections to the Report and Recommendation, petitioner contended he was entitled to equitable tolling "because (1) '[he] seeks federal review of an unconstitutionally flawed conviction, and the Supreme Court has recognized that the statute of limitations is to be interpreted fairly and in an even handed fashion' and (2) 'as of the time the federal petition was filed, there was a split of authority on the central issue in this case, e.g., as to whether AEDPA's limitations period is tolled by certiorari petitions filed with the Supreme Court, thus revealing the complexity of the legal questions presented to petitioner and his counsel.'

---

[2]   In its October 12, 2007 Minute Order, the Court also denied petitioner's Motion to Amend the Petition.

1    As support for the second equitable tolling argument, petitioner cited to the fact

2  that, in contrast to the Ninth Circuit in White v. Klitzkie, 281 F.3d 920, 925 (9th Cir.

3  2002), the Abela Court had held that the limitations period was tolled until the conclusion

4  of the time for filing a petition for writ of certiorari in the United States Supreme Court.

5  (See Objections at 11).  As further support for the second equitable tolling argument,

6  petitioner's counsel declared that she had relied on Abela "in her calculation and

7  calendaring of the applicable limitations period" for the filing of the Petition.  (See Bassis

8  Declaration at ¶ 3).  As further support for the second equitable tolling argument,

9  petitioner alleged that there was confusion about the tolling of the statute of limitations as

10  a result of United States Supreme Court cases decided subsequent to White, i.e., Carey v.

11  Saffold, 536 U.S. 214, 219, 122 S.Ct. 2134, 153 L.Ed.2d 2d (2002); Clay v. United States

12  537 U.S. 522, 123 S.Ct. 1072, 155 L.Ed.2d 88 (2003), and as demonstrated by the United

13  States Supreme Court's grant of the petition for writ of certiorari in Lawrence v. Florida

14  547 U.S. 1039, 126 S.Ct. 1625, 164 L.Ed.2d 332 (2006) prior to the filing of the instant

15  Petition.  (See Response to Supplemental Reply at 8-16).

16    The Court rejected petitioner's equitable tolling contention, as follows:

17      Here, petitioner has failed to establish that circumstances beyond his control

18    made it impossible for him to file a timely federal habeas petition.  See Pace v.

19    Diguglielmo, 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005)(a

20    petitioner seeking equitable tolling bears the burden of establishing "(1) that he has

21    been pursuing his rights diligently, and (2) that some extraordinary circumstance

22    stood in his way.").  More than four years prior to the filing of the Petition, the

23    Ninth Circuit in White decided that a federal habeas petitioner would not be

24    entitled to statutory tolling under for the 90-day period following the California

25    Supreme Court's denial of a habeas petition.  Contrary to petitioner's assertions,

26    the conflicting decisions of the Ninth Circuit in White and the Sixth Circuit in

27    Abela did not result in legal confusion that would warrant petitioner's entitlement

28    to equitable tolling.  See Provencio v. Henry, 233 Fed.Appx. 743, 744 (9th Cir.

2007)("The fact that [the petitioner] is able to point to one case reaching a contrary result, see Abela v. Martin, 348 F.3d 164 (6th Cir. 2003) (en banc), is not sufficient to give rise to the type of "extraordinary circumstances" required to justify equitable tolling in this circuit."). Petitioner's attorney's miscalculation of the statute of limitations does not entitle petitioner to equitable tolling. See Lawrence, supra, 127 S.Ct. at 1085; Miranda v. Castro, 292 F.3d 1063, 1067-68 (9th Cir. 2002), cert. denied, 537 U.S. 1003 (2002); Frye v. Hickman, 273 F.3d 1144, 1146 (9th Cir. 2001), cert. denied, 535 U.S. 1055 (2002). (See Final Report and Recommendation at 12-13).[3]

On January 17, 2008, the district court denied the Petition with prejudice, in accordance with the conclusions of the Magistrate Judge. Judgment was entered on the same date.

Petitioner filed a Motion to Vacate the Judgment and for an Enlargement of Time to file Objections on January 28, 2008. In a Minute Order issued on January 30, 2008, the Court granted petitioner an enlargement of time to file Objections to the Final Report and Recommendation. Petitioner filed Objections to the Final Report and Report and Recommendation on February 8, 2008. On April 2, 2008, the district court denied the Motion to Vacate Judgment and overruled the Objections to the Final Report and Recommendation.

On April 2, 2008, the district court denied petitioner's Request for a Certificate of Appealability.

On November 18, 2008, the Ninth Circuit Court of Appeals denied petitioner's request for a certificate of appealability.

Petitioner filed a Motion for Relief from Judgment on March 27, 2009. On April

---

[3]     The Court also rejected petitioner's argument that his counsel was confused about the tolling of the statute of limitations based on United States Supreme Court cases decided subsequent to White, since petitioner's counsel did not allege reliance on those cases as a basis for equitable tolling. (See Final Report and Recommendation at 12 n. 14).

1  3, 2009, the district court denied petitioner's Motion for Relief from Judgment.

2      Petitioner filed a Motion for Reconsideration and Relief from Judgment on

3  September 25, 2009.  On October 2, 2009, the district court denied petitioner's Motion

4  for Reconsideration and Relief from Judgment.

5      Petitioner filed another Motion for Relief from Judgment on February 16, 2010.

6  After receiving extensions of time, on May 17, 2010, respondent filed an Opposition to

7  the Motion for Relief from Judgment.  On August 10, 2010, the district court denied

8  petitioner's Motion for Relief from Judgment.

9      Petitioner filed another Motion for Relief from Judgment on October 13, 2010.  On

10 November 1, 2010, the district court denied petitioner's Motion for Relief from

11 Judgment.

12     On November 12, 2010, petitioner filed a Motion for Reconsideration of the

13 August 10, 2010 denial of the Motion for Relief from Judgment.[4]

14     On December 3, 2010, petitioner filed a Motion for Reconsideration of the

15 November 1, 2010 denial of the Motion for Relief from Judgment.  On December 9,

16 2010, the district court denied petitioner's Motion for Reconsideration.

17     Petitioner filed an Application for a Certificate of Appealability arising from the

18 November 1, 2010 denial of petitioner's Motion for Relief from Judgment and the

19 December 9, 2010 denial of petitioner's Motion for Reconsideration.  On April 15, 2011,

20 the district court denied petitioner's Application for a Certificate of Appealability.

21     On July 6, 2011, the Ninth Circuit Court of Appeals granted petitioner's request for

22 a certificate of appealability with respect to "whether the district court abused its

23 discretion in denying appellant's motion for relief from judgment under Federal Rule of

24 Civil Procedure 60(b) based on federal habeas counsel's alleged misconduct."

25

26     [4]    Although the Court had intended to deny that Motion for Reconsideration,
   there is no indication in the docket that the Court ruled on that Motion for
27 Reconsideration.  Based on the Court's determination herein that the Petition is timely
   based on petitioner's entitlement to equitable tolling, the Court denies that Motion for
28 Reconsideration as moot.

1      On August 15, 2013, the Ninth Circuit Court of Appeals vacated the Judgment and

2 remanded the matter to the district court for purposes of holding an evidentiary hearing

3 on petitioner's claim that he is entitled to equitable tolling on the basis of his federal

4 habeas counsel's alleged misconduct (beyond "her reliance on out-of-circuit case law

5 directly contradicting Ninth Circuit case law") in "ignor[ing] his communications

6 questioning her calculation of the filing deadline and asking her to conduct additional

7 research."[5]

8      Following receipt of the Ninth Circuit's mandate, the Court appointed the Office of

9 the Federal Public Defender as counsel for petitioner.  The deposition of Lisa Bassis

10 ("Bassis Deposition"), petitioner's federal habeas counsel, took place on December 20,

11 2013.  Prior to the evidentiary hearing, petitioner filed a Pre-Hearing Brief ("Petitioner's

12 Pre-HB"), respondent filed a Pre-Evidentiary Hearing Brief ("Respondent's Pre-EHB"),

13 and the parties filed a Joint Witness List (amended to include petitioner's federal habeas

14 counsel, see Evidentiary Hearing Transcript ["EHT"] at 14), a Joint Exhibit List, and

15 Joint Stipulations.  The evidentiary hearing took place on February 25, 2014.  Four

16 people -- Lisa Bassis, petitioner, Cifford Gardner, and Raymond Garcia -- testified at the

17 hearing, and the Declaration of Jonathan Milberg was admitted in lieu of his testimony at

18 the hearing.  Following the evidentiary hearing,  petitioner filed a Post-Hearing Brief

19 ("Petitioner's PHB"), and respondent filed a Post-Evidentiary Hearing Brief

20 ("Respondent's PEHB").

21

22      Thus, this Findings and Conclusion Following Evidentiary Hearing now issues.[6]

23

24      [5]    The Ninth Circuit Court of Appeals stated, "Based only on the record before
the district court, and assuming Borhan's allegations are true, we conclude that Bassis's
25 conduct suggest that extraordinary circumstances existed to support granting equitable
tolling."
26

27      [6]    Respondent has filed a Return to the Petition addressing the merits of the
claims alleged in the Petition.  After petitioner files a Reply to the Return, the Court will
28 issue a Report and Recommendation addressing the merits of the claims alleged in the

(continued...)

1
2

## II.  PROCEDURAL HISTORY

3       On December 10, 2002, a Los Angeles Superior Court jury found petitioner guilty

4   of two counts of committing a lewd act upon a child.  In addition, the jury found true the

5   special allegations that petitioner had committed the offenses on more than one victim at

6   the same time and in the same course of conduct.  (See Clerk's Transcript ["CT"] at 149-

7   153).   On March 20, 2003, after denying petitioner's motion for a new trial, the trial

8   court sentenced petitioner to state prison for a total of 15 years to life.  (See CT at 187-88,

9   193-94).

10      Petitioner appealed his convictions to the California Court of Appeal, wherein he

11  alleged the same claims as the first and second claims alleged in the Petition herein.  In an

12  unpublished Opinion issued on May 24, 2004, the California Court of Appeal modified

13  the Judgment to alter the presentence credit award and affirmed in all other respects.  (See

14  respondent's Notice of Lodging ["Lodgment"] No. 8).

15      On November 14, 2003 (while petitioner's appeal was pending), petitioner

16  (through counsel) filed a petition for writ of habeas corpus with the California Court of

17  Appeal, alleging the same claim as the third claim alleged in the original Petition herein.[7]

18  On November 20, 2003, the California Court of Appeal denied that habeas petition.  (See

19  Lodgment No. 3).

20      On February 4, 2004 (also while petitioner's appeal was pending), petitioner filed a

21  letter with the California Court of Appeal, alleging a claim corresponding to the first

22

23  _____

24      [6] (...continued)
    Petition.

25      [7]    Pursuant to the "mailbox" rule, this Court utilizes the date on which a pro
26  per provide  prison authorities with the document as the filing date.  See Houston v. Lack,
    487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988); Patterson v. Stewart, 251 F.3d
27  1243, 1245 n.2 (9th Cir. 2001); Saffold v. Newland, 250 F.3d 1262, 1268 (9th Cir. 2001).
            However, petitioner is not entitled to the "mailbox rule" since he filed his
28  California habeas petition with the assistance of counsel.  See Stillman v. Lamarque, 319
    F.3d 1199, 1201 (9th Cir. 2003).

1  claim alleged in the original Petition herein.  (<u>See</u> Lodgment No. 4).  On April 1, 2004,

2  the California Court of Appeal, construing petitioner's letter as a habeas petition, denied

3  it because the "issues have been raised in petitioner's direct appeal" (with citation to

4  citation to <u>In re Harris</u>, 5 Cal.4th 813, 825 (1993), <u>In re Clark</u>, 5 Cal.4th 750, 765 (1993)

5  and <u>In re Waltreus</u>, 62 Cal.2d 218, 225 (1965)).  (<u>See</u> Lodgment No. 5).

6       On May 13, 2004 (also while petitioner's appeal was pending), petitioner filed

7  another letter with the California Court of Appeal, alleging <u>inter alia</u> a claim

8  corresponding to the first claim alleged in the original Petition herein.  (<u>See</u> Lodgment

9  No. 6).  On June 1, 2004, the California Court, construing petitioner's letter as a habeas

10  petition, denied it, stating that: "Petitioner is procedurally defaulted from raising issues

11  concerning his conviction in unjustified successive habeas corpus petitions" (with citation

12  to <u>McCleskey v. Zant</u>, 499 U.S. 467, 498 (1991) and <u>In re Clark</u>, 5 Cal.4th 750, 771, 775

13  (1993)).  (<u>See</u> Lodgment No. 7).

14       Petitioner then filed a Petition for Review with the California Supreme Court,

15  wherein he alleged the same claims as the first and second claims alleged in the original

16  Petition herein.  (<u>See</u> Lodgment Nos. 9 and 11).  On July 28, 2004, the California

17  Supreme Court summarily denied the Petition for Review without citation of authority.

18  (<u>See</u> Lodgment No. 12).

19       On July 19, 2004 (while petitioner's Petition for Review was pending), petitioner

20  (through counsel) filed a habeas petition with the California Supreme Court, alleging

21  <u>inter alia</u> the same claims as the first and second claims alleged in the original Petition

22  herein.  (<u>See</u> Lodgment No. 13).  On June 8, 2005, the California Supreme Court

23  summarily denied that habeas petition without citation of authority.  (<u>See</u> Lodgment No.

24  14).

25       On August 4, 2004 (while petitioner's first California Supreme Court habeas

26  petition was pending), petitioner filed another habeas petition with the California

27  Supreme Court, alleging <u>inter alia</u> the same claims as the first, second and fifth claims

28  alleged in the original Petition herein.  (<u>See</u> Lodgment No. 15).  On June 8, 2005, the

California Supreme Court summarily denied that habeas petition without citation of authority.  (See Lodgment No. 16).

On September 22, 2006, the instant Petition was filed in the United States District Court for the Southern District of California.  The Petition was transferred to this Court on September 28, 2006, and filed on October 2, 2006.

On July 9, 2006, petitioner (through counsel) filed a habeas petition with the California Supreme Court, wherein he alleged <u>inter alia</u> the same claims as the fourth claim alleged in the original Petition herein and the new ineffective assistance of appellate counsel claim alleged in the proposed First Amended Petition.  (See Lodgment No. 23).  As of today's date, it appears that the California Supreme Court has not yet ruled on petitioner's habeas petition.  (See www.appellatecases.courtinfo.ca.gov).

On October 4, 2006, petitioner (through counsel) filed a habeas petition with the California Court of Appeal.  (See Lodgment No. 21).  On October 26, 2006, the California Court of Appeal denied that habeas petition.  (See Lodgment No. 22).

## III.  THE PETITION IS NOT TIME BARRED

**A.  Absent grounds to either delay the running of or equitably toll the statute of limitations, the Petition is untimely.**

Federal habeas corpus relief is governed by statute and codified in Title 28, United States Code at Sections 2241-2255.  In an attempt to "curb delays, to prevent 'retrials' on federal habeas, and to give effect to state convictions to the extent possible under law," Congress, as part of the Anti-terrorism and Effective Death Penalty Act of 1996, revised several of the statutes governing federal habeas relief.  <u>Williams v. Taylor</u>, 529 U.S. 362, 404, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).  One such revision amended  28 U.S.C. § 2244 to include a one-year statute of limitations for state prisoners seeking federal habeas

1  relief.[8]

2      A state prisoner with a conviction finalized after April 24, 1996, such as petitioner,

3  must seek federal habeas relief "within one year of the date his process of direct review

4  came to an end." <u>Calderon v. United States District Court (Beeler)</u>, 128 F.3d 1283, 1286

5  (9th Cir. 1997), <u>overruled in part on other grounds</u> by <u>Calderon v. United States District</u>

6  <u>Court (Kelly)</u>, 163 F.3d 530 (9th Cir. 1998)(en banc).

7      Here, the California Supreme Court denied petitioner's Petition for Review on July

8  28, 2004.  Thus, the statute of limitations commenced to run on October 26, 2004, when

9  petitioner's time to petition the United States Supreme Court for a writ of certiorari

10  expired.[9]  <u>See</u> <u>Bowen v. Roe</u>, 188 F.3d 1157, 1158-59 (9th Cir. 1999).  Petitioner

11  therefore initially had until October 26, 2005 to timely seek federal habeas relief.

12      However, the statute of limitations was tolled from October 27, 2004 (since

13  petitioner had earlier filed habeas petitions in the California Supreme Court on July 19,

14  2004 and August 4, 2004 (<u>see</u> Lodgment Nos. 13 and 15) to June 8, 2005, the date on

15  which the California Supreme Court denied petitioner's habeas petitions (<u>see</u> Lodgment

16  Nos. 14 and 16).  <u>See</u> 28 U.S.C. § 2244(d)(2); <u>Carey v. Saffold</u>, 536 U.S. 214, 223, 122

17

18        [8]    28 U.S.C. § 2244(d)(1)-(2) provides as follows:
  "(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus

19  by a person in custody pursuant to the judgment of a State court.  The limitation period
shall run from the latest of--

20          (A) the date on which the judgment became final by the conclusion of direct
        review or the expiration of the time for seeking such review;

21          (B) the date on which the impediment to filing an application created by
        State action in violation of the Constitution or laws of the United States is

22          removed, if the applicant was prevented from filing by such State action;
        (C) the date on which the constitutional right asserted was initially

23          recognized by the Supreme Court, if the right has been newly recognized by
        the Supreme Court and made retroactively applicable to cases on collateral

24          review; or
        (D) the date on which the factual predicate of the claim or claims presented

25          could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other

26  collateral review with respect to the pertinent judgment or claim is pending shall not be
counted toward any period of limitation under this subsection."

27        [9]    Pursuant to United States Supreme Court Rule 13.1, petitioner had 90 days

28  from the date the Order denying his Petition for Review became final to petition the
Supreme Court for a writ of certiorari.

1    S.Ct. 2134, 153 L.Ed.2d 260 (2002); Jiminez v. Rice, 276 F.3d 478, 482 (9th Cir. 2001);

2    Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999), cert. denied, 529 U.S. 1104

3    (2000).[10] Therefore, the statute of limitations re-commenced on June 8, 2005, and

4    petitioner had a full year until June 8, 2006, to timely seek federal habeas relief.[11]

5         Petitioner filed his most recent habeas petitions with the California Court of

6    Appeal and the California Supreme Court after the one-year statute of limitations expired.

7    (See Lodgment Nos. 21 and 23).  Thus, those habeas petitions did not statutorily toll the

8    limitations period.  See 28 U.S.C. § 2244(d)(2); Ferguson v. Palmateer, 321 F.3d 820,

9    823 (9th Cir.) (28 U.S.C. § 2244(d) "does not permit the reinitiation of the limitations

10   period that has ended before the state petition as filed."), cert. denied, 540 U.S. 924

11   (2003).

12        The instant Petition was not filed in the Southern District until September 22,

13   2006, more than three months after the statute of limitations expired.[12]

14   _____

15        [10]   Petitioner concedes that he is not entitled to tolling for his first three
     California Court of Appeal habeas petitions which were filed and denied prior to the time
16   the statute of limitations began to run.  (See Reply at 2 n.1).

17        [11]   Contrary to petitioner's assertions (see Reply at 2-3, Objections at 6-9), the
     statute of limitations did  not extend to September 7, 2006.  The cases cited by petitioner
18   do not support his assertion that he had 455 days (rather than 365 days) after the
     California Supreme Court's denial of his habeas petitions to file the instant Petition.
19   Moreover, there is no support for the proposition that the 90-day period for seeking a writ
     of certiorari to the United States Supreme Court commenced later than July 28, 2004, the
20   date the California Supreme court denied the Petition for Review.  Petitioner was not
     entitled to an additional 90 days of statutory tolling following the California Supreme
21   Court's June 8, 2005 denial of his habeas petition.  See Lawrence v. Florida, supra at n. 1,
     549 U.S. at 330-36 (holding that the petitioner was not entitled to statutory tolling under
22   28 U.S.C. § 2244(d)(2) during the pendency of a petition for writ of certiorari following
     state postconviction or other collateral review).
23
          [12]   Petitioner contends that the Court should use September 5, 2006 (the date the
24   instant Petition was allegedly delivered to the United States District Court for the
     Southern District of California) as the date the instant Petition was filed.  (See Reply at 2-
25   3, Exhibit 1; Objections at 9-10; Petitioner's Response at 16-18; Petitioner's PHB at 2
     n.1).  Respondent contends that the Court should use October 2, 2006 (the date that the
26   instant Petition was filed in this Court following transfer from the Southern District) as
     the date the instant Petition was filed.  (See Opposition at 8; Reply to Objections at 3;
27   Supplemental Reply at 8; Reply to Petitioner's Response at 9-10).
          The Court need not determine whether September 5, 2006 or October 2,
28                                                                          (continued...)

**B.**   **Petitioner has established grounds for equitably tolling the statute of limitations.**

Under 28 U.S.C. § 2244(d), the statute of limitations begins to run the later of four possible dates.  28 U.S.C. § 2244(d)(1)(A)-(D).  Petitioner has not alleged the applicability of any of the statutory circumstances that would delay the running of the statute of limitations.

The United States Supreme Court has recognized the availability of equitable tolling to the one-year statute of limitations in "extraordinary circumstances," such as those involving "serious instances of attorney misconduct."  Holland v. Florida, 560 U.S. 631, 649-52, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010).

The Ninth Circuit has recognized the availability of equitable tolling to the one-year statute of limitations in situations where "extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time." Beeler, supra, 128 F.3d at 1289 (9th Cir. 1997) (emphasis added)(citations omitted).  The words "extraordinary" and "impossible" suggest the limited availability of this doctrine.  To date, the Ninth Circuit has found very few circumstances which warrant equitable tolling.[13]   The lack of

_____

[12]  (...continued)
2006 is the proper filing date, since, based on petitioner's entitlement to equitable tolling, as discussed herein, the instant Petition would be timely under either date.

[13]      See e.g., Gibbs v. LeGrand, 2014 WL 4627991, *4-*6 (9th Cir. 2014) (equitable tolling where petitioner's counsel abandoned petitioner by failing to notify him of the state supreme court's denial of his appeal of his state post-conviction petition until after the expiration of the statute of limitations, despite petitioner's repeated inquiries); Doe v. Busby, 661 F.3d 1001, 1012-15 (9th Cir. 2011) (equitable tolling warranted where petitioner's counsel failed to file federal habeas petition after making numerous promises to timely file, petitioner's counsel did not return petitioner's file until long after the statute of limitations had run, and petitioner was reasonably diligent in pursuing his rights); Bills v. Clark, 628 F.3d 1092, 1098-1101 (9th Cir. 2010)(equitable tolling may be warranted where "mental impairment so severe that the petitioner was unable personally either to understand the need to timely file or prepare a habeas petition, and that impairment made it impossible under the totality of the circumstances to meet the filing deadline despite petitioner's diligence"); Harris v. Carter, 515 F.3d 1051, 1054-57 (9th Cir. 2008)(petitioner entitled to equitable tolling because he relied on the Ninth Circuit's legally erroneous holding in determining when to file a federal habeas petition); Jefferson v. Budge, 419 F.3d 1013, 1014, 1017 (9th Cir. 2005)(petitioner entitled to equitable

(continued...)

precedent finding circumstances worthy of equitable tolling suggests not only the scarce applicability of the doctrine, but also that the circumstances must truly rise to the occasion of being "extraordinary" and petitioner must be able to demonstrate that filing a timely petition was not possible.

Petitioner contends he is entitled to equitable tolling based on his counsel's erroneous reliance on the Sixth Circuit decision in Abela, supra (holding that the one-year statute of limitations was tolled for a "properly filed application for State post-conviction or other collateral review" until the conclusion of the time for filing a petition for writ of certiorari in the United States Supreme Court), rather than on the binding Ninth Circuit decision in White, supra (holding that the petitioner was not entitled to statutory tolling for the 90-day period during which he could have sought certiorari in the United States Supreme Court following the denial of his state habeas petition).  His contention that he is entitled to equitable tolling, as supplemented post-remand, is based on his counsel's serious misconduct in "fail[ing] to perform the basic function of identifying and/or abiding by widely-accepted and controlling Ninth Circuit precedent," "ignoring

---

<sup>13</sup> (...continued)
tolling because district court dismissed mixed petition without first giving petitioner choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims, but assumes "ordinary diligence" on the petitioner's part); Spitsyn v. Moore, 345 F.3d 796, 800-02, (9th Cir. 2003)(although in a non-capital case an attorney's negligence usually will not justify equitable tolling, equitable tolling available where the attorney does nothing, is completely unresponsive, and fails to return the petitioner's file until after the statute of limitations had run); Smith v. Ratelle, 323 F.3d 813, 819  (9th Cir. 2003)(petitioner entitled to equitable tolling because  district court erroneously dismissed his earlier, timely petition without first giving him an opportunity to file an amended petition as an alternative to dismissal for failure to exhaust state remedies as to all claims); Corjasso v. Ayers, 278 F.3d 874, 877-79 (9th Cir. 2002)(equitable tolling warranted where district court mishandles a petition [dismissal on a technicality and losing the body of the petition] causing it to be untimely); Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999)(equitable tolling available where petitioner turned petition over to prison officials before the statutory deadline but a delay in mailing caused petition to be untimely); Beeler, supra, 128 F.3d at 1289 (equitable tolling available in situation where petitioner's lead counsel withdraws, and replacement counsel needs time to become familiar with case); Calderon v. United States Dist. Court (Kelly), 163 F.3d 530, 541 (9th Cir. 1998) (equitable tolling available in light of petitioner's possible mental incompetence), cert. denied, 526 U.S. 1060 (1999).

1  [petitioner's] phone calls and written pleas to file the petition on time and his doubts

2  about her erroneous interpretation of the law," and "problems receiving mail delivered to

3  her post office box, where she directed clients to send her correspondence." (Petitioner's

4  Pre-HB at 3; see also Petitioner's PHB at 10-16 [alleging that petitioner's counsel

5  engaged in extraordinary misconduct by violating her basic professional responsibility to

6  petitioner when she failed "to determine whether the Sixth Circuit's rule in *Abela* was

7  applicable in the Ninth Circuit" and by failing to file petitioner's federal habeas petition

8  "despite his repeated warnings and questions"]).

9

10        1.    Summary of the Evidentiary Hearing Testimony

11              a.    Lisa Bassis

12        Ms. Bassis, a sole practitioner, was retained by petitioner on September 12, 2005

13  for the purpose of filing a federal habeas petition.  She charged $20,000 for her services.

14  She agreed it was important to know the United States Supreme Court decisions and

15  controlling Circuit Court decisions regarding the one-year statute of limitations.  (See

16  EHT at 36-38, 41-42, 80).

17        Based on her research, she concluded, based on Abela, that petitioner had fifteen

18  months from the end of petitioner's state habeas proceedings to file petitioner's federal

19  habeas petition.  Prior to filing petitioner's habeas petition, she was not aware of White.

20  (See EHT at 42-45; Bassis Deposition at 68).

21        While representing petitioner, she spoke to attorney Clifford Gardner over the

22  phone in order to get information about petitioner's case (i.e., why he was not retained by

23  petitioner, concerns he had about the case).  She and Mr. Gardner briefly discussed the

24  limitations period.  In a Declaration submitted to the Ninth Circuit, she wrote that Mr.

25  Gardner "concluded in a letter sent directly to Mr. Borhan that he had one year plus 90

26  days from the denial of the state habeas petition in which to file the federal writ" (see

27  Petitioner's Exhibit No. 11 at 5).  (See EHT at 49-50, 56).

28        While representing petitioner, she spoke at least once to Jonathan Milberg, an

16

attorney familiar with federal habeas issues.  Mr. Milberg told her that she had fifteen months from the denial of petitioner's state habeas petitions to file a federal habeas petition, but did not provide her with any legal authority.  (See EHT at 45-49; Petitioner's Exhibit No. 9 at 1).

While representing petitioner, she spoke to David Goodwin, an attorney, who gave her the same advice as Mr. Milberg.  (See EHT at 47-49; Petitioner's Exhibit No. 9 at 2).[14][15]

Petitioner wrote her a lot of letters, more than most of her other clients, and among the highest volume she had seen.  However, she did not know how many letters from petitioner she received.  She kept every letter petitioner sent to her.[16]  (She testified that at her deposition she was shown a number of letters which she had not received.)

In a letter dated December 5, 2005, petitioner stated that she had not been accepting his calls, that she would not fly to see him in person, and that he had concerns about the issues she was going to raise and how much time they had left to file (see Petitioner's Exhibit No. 17).  She testified she never received that letter, and there was never any discussion about her visiting him in person.

In a letter dated March 29, 2006, petitioner stated that he still had not heard from her, that she had not accepted his calls, that a jailhouse lawyer had told him that the one-year statute of limitations was not tolled "during the 90 days we could file in U.S. Supreme Court," that she should double check the deadline and notify him, and that he wanted to know what issues were going to be raised (see Petitioner's Exhibit No. 21).

---

[14]     She testified that she took contemporaneous notes of her telephone conversations with Mr. Milberg and Mr. Goodwin, but that she did not put their names on those notes until shortly after her conversations with them, to distinguish one from the other.  (See EHT at 48-49).

[15]     She testified that the first time she mentioned that she had consulted with other lawyers who confirmed her view of the deadline was in response to a Ninth Circuit's order to show cause regarding sanctions.  (See EHT at 53).

[16]     At her deposition, she testified she received over fifty letters from petitioner.  (See Bassis Deposition at 149).  However, her file contained only twenty letters from petitioner.  (See Declaration of Joseph A. Trigilio in Support of Post-Hearing Brief, ¶ 3)

1    She testified she never received that letter.

2          In a letter dated April 22, 2006, petitioner stated that he hoped she had gotten

3    caught up with her backlog and had time to work on his habeas petition, that he would

4    like her to provide him the caselaw on the statute of limitations, that he would like her to

5    accept his call or respond to him in writing, and asked whether she had consulted with

6    other lawyers or reviewed cases on the statute of limitations (see Petitioner's Exhibit No.

7    22). She testified she did not receive that letter.[17]

8          In a letter dated July 11, 2006, petitioner stated that he last spoken with her on the

9    phone in February, that he had called her twice weekly since February and had previously

10   sent her a letter (to which he did not receive a response), that she had said "there's an

11   extra 90 days," that perhaps, against his wishes, she was "leaving [his federal habeas

12   petition] for the last minute," and that he wanted her to write him a letter describing the

13   issues to be raised (see Petitioner's Exhibit No. 24). She admitted receiving that letter.

14         She sent over fifty letters to petitioner. She never had any communications with

15   petitioner about her work load, and she did not have any communications with petitioner

16   about the statute of limitations until after the Court ruled the Petition was untimely. (See

17

18   _____

          [17]    Between November 2005 and April 2006, she did not timely receive some

19   mail that had been sent to her post office box (provided to clients and the courts), since
     overflow mail had been placed in a box. She became aware of the gaps because expected
     mail did not arrive and people had told her they had sent her mail. She ultimately

20   received the accumulated mail. The untimely receipt of mail caused her to miss court
     deadlines. (See EHT at 63-65; see also Petitioner's Exhibit No. 7 [In a Declaration dated

21   February 1, 2007, Ms. Bassis stated that she had "serious problems with mail delivery"
     for some time, including November 2005 through April 2006. She stated, "Over the past

22   year, mail has been lost, returned to sender, received extraordinarily late, or simply never
     received at all.").

23         During cross-examination, Ms. Bassis testified that she had never received
     letters from petitioner dated January 15, 2006 (see EHT at 83; Petitioner's Exhibit No. 18

24   [wherein petitioner stated that he had not heard from her and was concerned about what
     issues would be raised in his federal habeas petition, and that if the deadline was in July

25   there was less than half a year to file]), February 25, 2006 (see EHT at 83-84;
     Respondent's Exhibit No. 100 [wherein he stated that he was sorry to hear the post office

26   had lost many letters and that he understood she would be busy for the next thirty days
     catching up on her other cases, and asked whether she had talked to lawyers about the

27   filing deadline], May 15, 2006 (see EHT 84-85; Petitioner's Exhibit No. 23 [wherein
     petitioner thanked her for her letter which told him about the extra 90 days, stated he

28   would like to know what issues were going to be raised, and asked her to accept at least
     one phone call].

1  EHT at 58-63, 83-84, 90, 92). [18]

2      She had frequent phone communications with petitioner.  Petitioner made collect

3  calls to her.  She created a phone log for petitioner's calls (see Petitioner's Exhibit No. 3),

4  but claimed it was not complete since additional calls were not entered. [19]  She initially

5  denied telling petitioner he could only communicate with her in writing.  When shown

6  her Declaration submitted to the Ninth Circuit wherein she stated, "Because he

7  consistently mischaracterized our conversations, I finally apprised him I would only

8  communicate with him in writing to avoid any misunderstanding" (see Petitioner's

9  Exhibit 11 at 9), she admitted her Declaration was not exactly correct: "What we did was

10 we limited the number of phone calls.  So I did agree to accept some phone calls, but I

11 would primarily communicate with him in writing."  She testified that by at least

12 February 8, 2006, she had told petitioner not to call her and to limit communication in

13 writing.  (See EHT at 58, 66-68). [20]

14     She stopped representing petitioner in 2008, but she continued to communicate

15 with him in letters through 2010.  Although she no longer represented petitioner, on

16 _____

17 [18]    During cross-examination, Ms. Bassis testified that following the Court's
   August 22, 2007 issuance of the Report and Recommendation recommending the
18 dismissal of the Petition as untimely, she did not give up.  Rather, she filed Objections to
   the Report and Recommendation, resulting in the vacating of that Report and
19 Recommendation.  She later filed a Response to respondent's Motion for
   Reconsideration.  Following the Court's issuance of a second Report and
20 Recommendation recommending the dismissal of the Petition as untimely, she did not
   abandon petitioner.  She filed Objections to the Report and Recommendation.  She later
21 filed a Notice of Appeal and a Request for a Certificate of Appealability.  (See EHT 94-
   101).  (Under the terms of the retainer agreement, she charged petitioner an additional
22 $7,500 to file the Request for a Certificate of Appealability. [See EHT at 80-81, 136-37;
   Petitioner's Exhibit No. 1 at 2]).

23 [19]    The phone log shows twenty-three phone conversations between her and
24 petitioner from April 7, 2005 through July 20, 2008.  Thirteen of those conversations
   were at least fifteen minutes long.  (See EHT at 87-88; Petitioner's Exhibit No. 3).

25 [20]    During cross-examination, Ms. Bassis testified that she spoke with petitioner
26 over the phone at least fifty times and that he would call her collect as many as ten times
   a day.  She did not accept subsequent calls because they mostly were repetitive and
27 counterproductive.  (See EHT at 85-86, 88-89).  She did not place a block on his phone
   calls until 2010.  (See EHT 89).  She spoke on the phone to petitioner's mother about
28 petitioner's case at least once a month, usually lasting from an hour to an hour and a half.
   (See EHT at 90).

February 2, 2014, she e-mailed the Mule Creek State Prison litigation coordinator a letter on office letterhead requesting petitioner's outgoing legal mail logs through December 31, 2010, and stating she needed the mail logs in connection with writ proceedings in both state and federal court.  (See Petitioner's Exhibit No. 43).  She did not tell the litigation coordinator she no longer represented petitioner, that her interests were presently adverse to petitioner's, or why she was entitled to the mail logs.  She did not inform petitioner or his counsel she was seeking the mail logs.  After the litigation coordinator agreed to provide the mail logs if she provided an authorization, she sent the authorization form petitioner originally signed in 2006 which "verif[ied] that Lisa Bassis is my attorney."  The litigation coordinator notified her that they would not provide the mail logs without an original authorization (not a photocopy), and that the federal public defender in Los Angeles was working with petitioner, and asked her to "clarify" how she was representing petitioner.  She did not provide any clarification to the litigation coordinator.  On February 20, 2014, the litigation coordinator sent her an email telling her to contact the federal public defender.  She did not contact the federal public defender.  She responded to the litigation coordinator that it was impossible for her to get an original authorization within the time remaining before the evidentiary hearing.  (See EHT at 69-74; Petitioner's Exhibits Nos. 61 and 62).[21]

Following the district court's denial of the Petition as untimely, she immediately sent petitioner the file.  (See EHT at 93-94).[22]  She regretted what occurred, but she did not believe she abandoned petitioner at any point.  (See EHT at 101).

---

[21]     During cross-examination, when asked the reason why she requested the mail logs, Ms. Bassis testified that during her deposition she was shown letters from petitioner she had never seen (she is careful to retain her original correspondence along with the envelope), and that during Ninth Circuit proceedings petitioner had made representations about three letters which were completely inaccurate, and that the mail logs would show that petitioner had fabricated those letters and that she had not abandoned petitioner.  (See EHT 101-02).

[22]     In a letter from Ms. Bassis to petitioner dated November 21, 2008, Ms. Bassis stated inter alia that the Ninth Circuit had denied the request for a certificate of appealability, and that "[t]he appellate court record from your case will be sent to you under separate cover."  (See Petitioner's Exhibit No. 59).

1          b.     Petitioner

2          Petitioner was incarcerated at Mule Creek State Prison between 2005 and 2006.  At

3    some point in 2005, petitioner contacted about twenty lawyers, including Clifford

4    Gardner, to inquire about representing him to handle his federal habeas proceeding.  After

5    providing attorneys with certain dates (but not any files or documents), a few attorneys,

6    including Clifford Gardner, told him the deadline for filing was twelve months, and a few

7    attorneys told him the deadline was fifteen months, but all attorneys requested copies of

8    the files/documents.  Although petitioner was leaning toward Mr. Gardner, in September

9    2005, he retained Ms. Bassis with his mother's money ($20,000).  When Ms. Bassis

10   began representing him, she said she would look into whether the filing deadline was

11   twelve or fifteen months.  (See EHT at 105, 107-10, 167-78).

12         Ms. Bassis refused to visit him in prison.  During the first couple of months of her

13   representation, he called Ms. Bassis approximately nine times.[23]  He called her repetitively

14   during that period because the phone disconnected after fifteen minutes; he would try to

15   call her back several times, but she would not accept his calls.  Starting in November

16   2005, she stopped accepting his calls (even though he continued to try to call her).  She

17   never told him that the reason she was not accepting his calls was because he was calling

18   in excess of ten times per day several times per week.  From November 2005 through

19   June 2006, he spoke to her on the phone one or two times.[24]  She put a block on his calls

20   in 2010, when he was calling her several times a day to see if she would represent him

21   based on Holland v. Florida, supra (see Respondent's Exhibit No. 112 [October 18, 2010

22   letter from Ms. Bassis to petitioner stating, "Regarding the block, this was necessary due

23

24         [23]     At his deposition, petitioner testified that he believed he spoke to Ms. Bassis
25   five to ten times between September and November 2005.  (See Respondent's Exhibit
     No. 118-83; EHT at 173-75).

26         [24]     During cross examination, petitioner testified he spoke to Ms. Bassis on the
27   phone one or two times, in February 2006 and possibly in August 2006, about the statute
     of limitations.  However, at his deposition, he testified he only had one phone
28   conversation with her about the statute of limitations (see Respondent's Exhibit No. 118-
     25).  (See EHT at 149-50, 172-73; Respondent's Exhibit No. 108-1, ¶ 3).

1    to the frequent and excessive number of calls to my office."]).  (See EHT at 110-12, 175-
2    77).

3         The only way he was able to communicate with Ms. Bassis was through letters,
4    some of which included enclosures or documents, such as other inmates' habeas
5    petitions, legal research, and holiday cards.  He sent her the December 5, 2005 letter.
6    When he asked about how much time did they have left, he was referring to the twelve to
7    fifteen months that she said she was going to research.  He sent her the January 15, 2006
8    letter.  When asked why he wrote they had "less than half a year," he testified, "So I
9    know if it is a one-year time limit, we have only until June of 2006.  He sent her the
10   March 29, 2006 letter.  When asked why he wrote "[w]e've only a few months left," he
11   testified, "I just, again, calculated if June is the deadline, we have only a very limited
12   time to file it."  He thought June 2006 might be the deadline based on what he was told
13   by different attorneys, including Ms. Bassis, that it could be 12 months.  He sent her the
14   April 22, 2006 letter.  When asked why he referred to her backlog, he testified that she
15   had told him the mail room had lost some of her mail and she was behind in her work in
16   other courts.  When asked why he asked her to tell him the caselaw, he testified he
17   wanted to look up the cases.  He sent her the May 15, 2006 letter.  When asked why he
18   thanked her for letting him know about the extra ninety days, he testified he was not sure
19   whether he learned about it through a letter she sent to him or his mother.  He often told
20   his mother to ask Ms. Bassis questions because he was not able to talk to Ms. Bassis.
21   (See EHT at 112-21).

22        Petitioner testified about the procedure he used to send letters from Mule Creek
23   State Prison between 2005 and 2006.  For mail he considered legal or confidential (any
24   legal document or anything he did not want to be read by others), including letters to
25   attorneys or government officials, he would obtain a "Proof of Service" form from the
26   library, write "legal mail" on the envelope, and take it to prison officers for signature.
27   After sending out the mail, the mail room would sign a form, and petitioner would
28   receive a receipt the following day.  Petitioner learned about that procedure from other

1   inmates and the librarian.  (See EHT at 123-24).[25]

2       He sent more non-legal than legal mail to Ms. Bassis, because the process of

3   sending legal mail was cumbersome (long waiting lines at the library, lack of "Proof of

4   Service" forms, complaints from prison officers).  If mail did not contain a legal

5   document and was not confidential, he would send it through non-legal mail (and make a

6   copy of it).  (See EHT at 123-25).[26]

7       He made copies of most, but not all, the letters he sent to Ms. Bassis.  Sometimes a

8   copy machine was not available and he was in a rush.  He still had copies of some of the

9   letters he sent to Ms. Bassis.  Two of his boxes were lost in 2009 when he was transferred

10  to another prison, one of his boxes was lost in 2010 when he was transferred to another

11  yard, and two of his boxes were lost in 2012 when he again was transferred to another

12  prison.  (See EHT at 125-27, 182-83).

13      Petitioner testified that beginning in November 2005, Ms. Bassis made several

14  threats to stop representing petitioner if he was not happy with her, including a threat to

15  stop representing him after he attempted (without success) to file a Supplemental

16  Objection in October 2007 wherein he argued that the Petition was not untimely based on

17  the ineffectiveness of his counsel (see Petitioner's Exhibit No. 53).  (See EHT at 129-

18  30).[27]

19      After receiving his case files from Ms. Bassis in November or December 2008,

20  petitioner, after hearing from a jailhouse lawyer about filing a 60(b) motion, wrote Ms.

21  Bassis a letter asking her to file a 60(b) motion.  On December 28, 2008, Ms. Bassis

22

23  _____

    [25]    During redirect examination, petitioner testified that, even though his July
    11, 2006 letter to Ms. Bassis did not contain a legal document, he sent it through legal
24  mail because he must have had an extra Proof of Service form.  (See EHT at 184-86;
    Petitioner's Exhibit No. 24 ["legal mail" is written on the envelope]).

25  
    [26]    During cross-examination, petitioner testified that he could not identify
26  which of his letters were sent to Ms. Bassis as legal versus non-legal mail.  (See EHT at
    182).

27  
    [27]    During cross-examination, petitioner acknowledged that the retainer
28  agreement for Ms. Bassis states, "For good cause and upon reasonable notice, I may
    withdraw as Mr. Borhan's attorney."  (See EHT at 140; Petitioner's Exhibit No. 1 at 3).

1    wrote petitioner a letter stating that "[s]uch a proceeding is only available to challenge the

2    denial of a motion" (see Petitioner's Exhibit No. 36).  (See EHT at 132-33).

3        The arguments contained in petitioner's 60(b) motions, and petitioner's Reply to

4    an Opposition (see Respondent's Exhibit No. 102), which he framed in the alternative,

5    were based on arguments Ms. Bassis had made in pleadings (see Petitioner's Exhibits 49

6    [Notice of Appeal] and 50 [Request for a Certificate of Appealability]).  (See EHT at

7    133-36, 155-56, 163, 166-67).[28]

8

9            c.    Clifford Gardner

10       Clifford Gardner is an attorney who, among other things, teaches attorneys about

11   federal habeas corpus issues, including the AEDPA's one-year statute of limitations.  In

12   Lawrence, supra at n. 1, decided in 2007, the United States Supreme Court resolved the

13   tolling issue which was the subject of differing decisions in the Ninth Circuit (White) and

14   the Sixth Circuit (Abela).  Prior to Lawrence, when lawyers asked about when the statute

15   of limitations would begin to run following the denial of a properly filed habeas petition

16   in the California Supreme Court, he consistently gave conservative advice -- to assume

17   that the statute of limitations would be tolled only when the habeas petition was actually

18   pending in state court.  His advice was based on White, the law of the Ninth Circuit.  He

19   never advised any California attorney to assume that the statute of limitations would be

20   tolled for 90 days following the California Supreme Court's denial of a habeas petition.

21   He did not recall ever speaking to Ms. Bassis.  (See EHT at 15-22, 32, 34).

22       On March 10, 2005, Mr. Gardner wrote a letter to petitioner about possible

23   representation, and expressed his belief that the one-year statute of limitations would

24   begin to run when the California Supreme Court ruled on his pending habeas petitions.

25

26   _____

27   [28]    During cross-examination, petitioner testified that, after the Petition was
     denied as untimely, Ms. Bassis told him that four attorneys -- the only attorney mentioned
     by name was Cliff Gardner -- told her that petitioner was entitled to 90 days of tolling

28   after the California Supreme Court's denial of his habeas petition.  (See EHT at 158-62;
     Respondent's Exhibit 118-45–118-47).

(See EHT 23-25; Petitioner's Exhibit No. 10 [wherein Mr. Gardner wrote, "Both state [habeas] petitions are still pending.  Under current law, this means that your one-year statute of limitations has not yet begun to run.  It will begin when the state supreme court rules on your currently pending petitions."]).

d.    Jonathan Milberg

The parties stipulated to the admission of the Declaration of Jonathan Milberg (see EHT at 11-12).

In a Declaration dated December 5, 2013, Jonathan Milberg declared as follows:

1.    I am an attorney licensed to practice law in the State of California.  I am admitted to practice in the Southern, Central, and Northern Federal Districts in California, along with the Ninth Circuit Court of Appeals and United States Supreme Court.  I have been an attorney since 1977.  Since I began practicing law, my practice has largely consisted of appeals and habeas corpus cases in state and federal court.

2.    Between September 2005 and September 2006 I was in private practice at my law firm, Appellate Associates, in Pasadena, California.  As part of my practice at that time, I was routinely tasked with calculating the applicable statute of limitations for federal petitions for writs of habeas corpus.  I was aware at the time of the one-year statute of limitations codified at 28 U.S.C. § 2244 as part of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  That statute imposed, subject to limited exceptions, a one-year statute of limitations within which petitioners must file a petition for writ of habeas corpus in federal district court.  Section 2244(d)(1) sets forth the various dates upon which the limitations period shall run.

3.    Section 2244(d)(2) provides that the one-year limitations period be tolled during the time that a properly filed state habeas application is "pending" in state court.  In 2002, the Ninth Circuit interpreted § 2244(d)(2) by holding that a

state habeas petition was not "ending" during the time that a state habeas petitioner was seeking or could seek certiorari in the United States Supreme Court from the denial of his state habeas petition. *White v. Klitzkie*, 281 F.3d 920, 924-25 (9th Cir. 2002). As a result, since 2002 it has been the rule in California federal district courts that the AEDPA statute of limitations restarts at the time the state court denies habeas relief, and is not tolled during the time in which a petitioner could seek certiorari with the Supreme Court following the denial of a state-habeas petition. The Supreme Court agreed with the Ninth Circuit and expanded this rule nation-wide in 2007. *See Lawrence v. Florida*, 549 U.S. 327 (2007).

4. Calculating the AEDPA statute of limitations deadline in a particular case requires looking at the relevant state pleadings as well as examining the basis for the state court's denial of the petition and the history of state court decisions in the case. It is not a determination that can be made quickly or without having see the relevant pleading and state court decisions (i.e., on direct appeal and on all habeas petitions). I would not, therefore, offer advice to another lawyer regarding the appropriate AEDPA statute of limitations deadline without first researching the facts of the case along with reviewing the relevant pleadings and state court decisions.

5. Deputy Federal Public Defender Joseph Trigilio informed me that Lisa Bassis claims to have consulted with me at some point in 2005 or 2006 regarding the appropriate statute of limitations deadline in one of her cases. Mr. Trigilio told me the name of the client whose petition deadline she claims to have consulted with me about was Payman Borhan. I have also been told by Mr. Trigilio that Ms. Bassis claims that I agreed that the one-year AEDPA statute of limitations did not begin to run until 90-days after the state court's denial of a habeas petition. Such a calculation – that the petitioner gets an extra 90 days from the denial of a state habeas petition on top of the one-year from the conclusion of direct review – contradicted Ninth Circuit authority in 2005 and 2006. I knew at

that time that such a rule regarding the extra 90 days contradicted Ninth Circuit authority. Thus, I would not have provided such advice to Ms. Bassis or anyone else. I do not recall having spoken to Ms. Bassis about the appropriate AEDPA statute of limitations deadline in Mr. Borhan's case, or in any other case. Indeed, prior to speaking with Mr. Trigilio, I have no recollection of having heard the name "Payman Borhan." Nor do I have any recollection of who Lisa Bassis is. (Petitioner's Exhibit No. 59).

        e.    <u>Raymond Garcia</u>

Raymond Garcia began working as the mail room supervisor at Mule Creek State Prison in March 2007. Based on his review of the 2005 and 2006 Department Operations Manuals, he had reason to believe he was familiar with how mail was process at Mule Creek State Prison from January 3, 2005 through December 12, 2006. According to the mail log for 2005 to 2006 (<u>see</u> Respondent's Exhibit No. 115), petitioner sent Ms. Bassis letters on September 13, 2005, September 16, 2005, September 23, 2005, September 27, 2005, October 3, 2005, October 11, 2005, December 16, 2005, December 27, 2005, January 24, 2006, June 16, 2006, July 12, 2006, August 8, 2006, and September 6, 2006.[29] Any letters not appearing on the mail log were not sent out by legal mail. Petitioner's letter to Ms. Bassis dated July 11, 2006 was sent out by legal mail. (<u>See</u> EHT at 186-89, 192-98, 202-03).

        2.    <u>Findings and Conclusion as to Equitable Tolling</u>

The Court finds that petitioner was credible with respect to his communications with Ms. Bassis.

As petitioner testified, and as Ms. Bassis admitted, petitioner sent her numerous

---

[29] The parties stipulated that petitioner's letters dated December 5, 2005, January 15, 2006, February 25, 2006, March 29, 2006, April 22, 2006 and May 15, 2006 did not appear on the mail log. (<u>See</u> EHT at 201).

letters.  Several of his letters -- his letters dated December 5, 2005, January 15, 2006, March 29, 2006, April 22, 2006, and July 11, 2006 -- specifically mentioned the statute of limitations issue (see Petitioner's Exhibit Nos. 17, 18, 21, 22 and 24).  From the very beginning of her representation of him (September 2005), petitioner was concerned with the filing deadline.  (See EHT at 110 [petitioner testified that she stated that the filing deadline could be 12 or 15 months and that she would look into it]; see also EHT 23-25, 107-08; Petitioner's Exhibit No. 10).

Petitioner's letters were consistent with his concerns about the filing deadline, and with Ms. Bassis' failure to communicate with petitioner about the filing deadline, at least at some time before May 15, 2006 (see Petitioner's Exhibit No. 23 [wherein petitioner stated that she had informed him by letter "of an extra 90 days"].  Moreover, petitioner's letters appear to accurately reflect Ms. Bassis' failure to communicate with petitioner.  In his letter dated December 5, 2005, petitioner stated that she had not been accepting his calls, which is consistent with her phone log (see Petitioner's Exhibit No. 3 at 1 [there are no phone calls listed from October 25, 2005 to February 27, 2006]; see also EHT at 66-68, 85-86, 88-89), and that this was his second letter.  (See Petitioner's Exhibit No. 17).  In his letter dated January 15, 2006, petitioner stated that he had not heard from her, which is consistent with her phone log (see Petitioner's Exhibit No. 3 at 1) and with her post office box issues between November 2005 and April 2006 (see EHT at 63-65).  (See Petitioner's Exhibit No. 18).  In his letter dated March 29, 2006, petitioner stated that he still had not heard from her, which is consistent with her post office box issues but is inconsistent with her phone log (see Petitioner's Exhibit No. 3 at 1 [there is a phone call listed on February 28, 2006]).  (See Petitioner's Exhibit No. 21).

There is no doubt that petitioner sent her the letter dated July 11, 2006 (see Petitioner's Exhibit No. 24).  (See EHT 61-62; see also EHT at 202-03; Respondent's Exhibit No. 115-9).  The statement in that letter -- that she had told him "there's an extra 90 days" -- was consistent with the information in his letter dated May 15, 2006 (see Petitioner's Exhibit No. 23).

1    While it is not clear to the Court whether she received all of petitioner's letters, her

2    non-receipt of his letters, if true, can be explained by her post office box issues between

3    November 2005 and April 2006 (see EHT at 63-65; Petitioner's Exhibit No. 7).  The fact

4    that not all of his letters to Ms. Bassis appear on the Mule Creek State Prison mail log can

5    be explained by his testimony that he would send letters as non-legal mail (if he did not

6    consider them legal or confidential) and he would send some letters (even if he

7    considered them legal or confidential) as non-legal mail if he was in a rush or he did not

8    have "Proof of Service" forms (see EHT at 123-25), and that he could not identify which

9    of his letters to Ms. Bassis were sent as legal or non-legal mail (see EHT at 182).

10    Moreover, petitioner's testimony that he spoke with Ms. Bassis on the phone in

11    February 2006, and possibly in August 2006, about the statute of limitations is credible.

12    His testimony is consistent with her phone log (see Petitioner's Exhibit No. 3 at 1), and

13    with his great concern over the filing deadline as reflected in his letters to her.

14    The Court finds Ms. Bassis less than credible with respect to her communications

15    with petitioner.  Her testimony that she never discussed the statute of limitations issue

16    with petitioner prior to the filing of the Petition (see EHT 92) is undermined by

17    petitioner's obvious concern with the statute of limitations issue prior to her

18    representation, as reflected by his communications with other attorneys, including

19    Clifford Gardner (see EHT at 23-25; Petitioner's Exhibit No. 10), at the beginning of her

20    representation, as reflected by petitioner's testimony that she said she would look at

21    whether the filing deadline was 12 or 15 months, as discussed above, and during her

22    representation, as reflected by petitioner's testimony about one or two phone calls he had

23    with her about the statute of limitations and by his statements about the statute of

24    limitations in his letters to her, as discussed above.

25    In addition, the Court finds Ms. Bassis not credible with respect to her receiving

26    the advice she insists she obtained from other attorneys regarding the statute of

27    limitations.  Contrary to Ms. Bassis' testimony (as well as her Declaration submitted to

28    the Ninth Circuit), the Court finds that neither Clifford Gardner nor Jonathan Milberg

1    ever advised her (or petitioner) that petitioner had 90 days of tolling following the
2    California Supreme Court's denial of his habeas petitions to file his federal habeas
3    petition (see EHT at 15-25, 32, 34; Petitioner's Exhibit Nos. 10 and 59).

4        Moreover, Ms. Bassis' testimony that attorney David Goodwin also gave her
5    erroneous advice about the statute of limitations is uncorroborated.

6        Moreover, Ms. Bassis did not mention that she had consulted with other lawyers
7    regarding the statute of limitations in petitioner's case until she responded to the Ninth
8    Circuit's order to show cause regarding sanctions (see EHT at 53), long after the district
9    court had rejected petitioner's argument for equitable tolling.

10       Moreover, in her response to the Ninth Circuit's order to show cause regarding
11   sanctions, Ms. Bassis grossly mischaracterized Mr. Gardner's letter to petitioner.  Ms.
12   Bassis represented that  "Clifford Gardner, an attorney in San Francisco with whom
13   [petitioner] independently consulted, had concluded in a letter sent directly to [petitioner]
14   that he had one year plus 90 days from the denial of his state habeas petition in which to
15   file the federal writ."  (See Petitioner's Exhibit No. 11 at 4-5).  However, Mr. Gardner's
16   letter stated a directly contrary conclusion, (see Petitioner's Exhibit No. 10), which was
17   corroborated by Mr. Gardner's credible testimony.

18       The Court finds that Ms. Bassis is more concerned with her professional reputation
19   than her professional ethics, which serves to undermine her credibility..
20   For example, she engaged in an clearly unethical attempt to obtain the Mule Creek State
21   Prison mail by use of a no longer valid authorization signed by petitioner (see EHT at 69-
22   74; Petitioner's Exhibit Nos. 43, 61, and 62). **[[(See pages        , lines     , supra).]]**  In
23   addition, she threatened to stop representing petitioner after he attempted, without
24   success, to file a Supplemental Objection to the Report and Recommendation (see EHT at
25   129-31; Petitioner's Exhibit Nos. 46 and 53) and by her statement to petitioner about the
26   propriety of his filing a motion under Fed. R. Civ. P. 60(b) (see EHT at 131-33;
27   Petitioner's Exhibit No. 36), apparently in order to dissuade him from pursuing relief
28

1 based on her ineffectiveness.[30]

2       Petitioner has established that circumstances beyond his control made it impossible
3 for him to file a timely federal habeas petition.  See Pace v. Diguglielmo, 544 U.S. 408,
4 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005)(a petitioner seeking equitable tolling bears
5 the burden of establishing "(1) that he has been pursuing his rights diligently, and (2) that
6 some extraordinary circumstance stood in his way.").

7       Petitioner pursued his rights diligently from the time Ms. Bassis began to represent
8 him.  He repeatedly communicated, or attempted to communicate, to Ms. Bassis via
9 numerous letters and one or two telephone calls, that he was very concerned about the
10 deadline for filing his federal habeas petition.  Indeed, in his letter dated July 15, 2006, he
11 stated that the filing deadline was July 2006 and that he did not want to file in the last
12 minute (see Petitioner's Exhibit No. 18); in his letter dated March 29, 2006, he stated that
13 a jailhouse lawyer told him that the statute of limitations was "not tolled during the time
14 we could file in the U.S. Supreme Court" (see Petitioner's Exhibit No. 21); in his April
15 22, 2006 letter, he asked for whether she had checked with other lawyers about the
16 deadline or researched caselaw on the issue (see Petitioner's Exhibit No. 22); in his letter
17 dated May 15, 2006, he thanked her for informing him of the "extra 90 days" (see
18 Petitioner's Exhibit No. 23); and in his letter dated July 11, 2006, he stated that she had
19 told him "there's an extra 90 days" and that he did not want to leave it for the last minute
20 (see Petitioner's Exhibit No. 24).

21       The issue here is whether Ms. Bassis' actions, as supplemented by petitioner's
22 post-remand allegations and the evidentiary hearing, involved an egregious or serious
23 instance of attorney misconduct amounting to "extraordinary circumstances."  See
24 Holland v. Florida, supra; Spitsyn v. Moore, 345 F.3d 796, 800 (9th Cir. 2003) ("Though
25 ordinary attorney negligence will not justify equitable tolling, we have acknowledged that

26

27     [30]    As noted above, petitioner, pro per, filed several motions for relief from
28 Judgment pursuant to Fed. R. Civ. P. 60(b), which the Court proceeded to rule on.

1  where an attorney's misconduct is sufficiently egregious, it may constitute an

2  "extraordinary circumstance" warranting equitable tolling of AEDPA's statute of

3  limitations."); see also Maples v. Thomas, 132 S.Ct. 912, 923-24, 181 L.Ed.2d 807

4  (2012) (in a case involving a petitioner's attempt to show cause for a procedural default

5  in state court, noting that, based on the concurring opinion in Holland, a petitioner

6  alleging and showing abandonment by his attorney, as opposed to egregious attorney

7  error, would establish "extraordinary circumstances beyond his control").

8      The Court recognizes that Ms. Bassis did perform various tasks during her

9  representation of petitioner.  She did conduct minimal (albeit, inadequate) legal research

10  about the filing deadline (see EHT at 44-45, Bassis Deposition at 68-69 [counsel's

11  testimony that she came across Abela while conducting research at home in an handbook

12  on habeas corpus law, that she relied on Abela to determine when to file the Petition, and

13  that she was not aware of White at the time of the filing of the Petition); she did

14  occasionally communicate with petitioner about various matters related to the Petition,

15  including the filing deadline (see Petitioner's Exhibit Nos. 23 and 24); she did

16  communicate with petitioner's mother about petitioner's case (see EHT at 90; Petitioner's

17  Exhibit No. 19); she did prepare and file the Petition; she did file the Petition (albeit,

18  untimely); she did attempt to persuade the district court and the Ninth Circuit to find that

19  the Petition was not untimely; and she did continue to communicate with petitioner

20  through 2010 (see EHT at 69-70, 89, 175-77; Petitioner's Exhibit No. 3; Respondent's

21  Exhibit No. 112).

22      However, based on Ms. Bassis' admission that it was important to know the

23  controlling Circuit Court decisions interpreting AEDPA's statute of limitations (see EHT

24  at 41-42), her testimony that she relied on a Sixth Circuit decision (which directly

25  contravened the binding Ninth Circuit decision) in determining the filing deadline, and

26  that she did not having any knowledge of the binding Ninth Circuit decision prior to the

27  filing of the Petition (see EHT at 42-45; Bassis Deposition at 68), her false testimony that

28  she received specific advice from Mr. Gardner and Mr. Millberg about the filing

1   deadline, her uncorroborated testimony that she received specific advice from Mr.

2   Goodwin about the filing deadline, her testimony that by February 8, 2006 (four months

3   prior to the expiration of the statute of limitations) she told petitioner not to call her and

4   to limit communication in writing (see EHT at 68), and her lack of responsiveness to

5   petitioner's concerns (communicated in letters and phone calls) about the filing deadline,

6   the Court finds that Ms. Bassis' conduct was tantamount to abandonment, and therefore

7   constituted "extraordinary circumstances."  See Holland, supra, 560 U.S. 631 at 652

8   (noting certain facts suggesting that the petitioner's counsel's actions may have amounted

9   to more than simple negligence: "[Counsel] failed to file Holland's federal petition on

10  time despite Holland's many letters that repeatedly emphasized the importance of him

11  doing so.  [Counsel] apparently did not do the research necessary to find out the proper

12  filing date, despite Holland's letters that went so far as to identify the applicable legal

13  rules. [Counsel] failed to inform Holland in a timely manner about the crucial fact that the

14  Florida Supreme Court had decided his case, again despite Holland's many pleas for that

15  information.  And [counsel] failed to communicate with his client over a period of years,

16  despite various pleas from Holland that [counsel] respond to his letters.");  Gibbs v.

17  LeGrand, 2014 WL 4627991, *4-*6 (9th Cir. 2014) (finding that the petitioner's

18  counsel's failure to notify the petitioner of the state supreme court's denial of his appeal

19  of his state post-conviction petition until after the expiration of the statute of limitations,

20  and failure to communicate with the petitioner "over a period of years," despite the

21  petitioner's repeated inquiries, was egregious conduct amounting to abandonment, and

22  therefore constituted an "extraordinary circumstance"); Doe v. Busby, supra, 661 F.3d at

23  1012-13 (finding that the petitioner had established "extraordinary circumstances" based

24  on his counsel's failure to file a federal habeas petition after making numerous promises

25  to timely file, and on his counsel's failure to return petitioner's file until long after the

26  statute of limitations had run); Spitsyn v. Moore, supra, 345 F.3d at 800-02 (9th Cir.

27  2003) (finding that the petitioner had established "extraordinary circumstances" based on

28  his counsel's failure to prepare and file a petition even though he was hired almost a full

1   year in advance of the deadline, his counsel's failure to communicate with him and his

2   mother even though they attempted to contact his counsel by phone and in writing

3   numerous times, and his counsel's failure to return his file until after the statute of

4   limitations had run); see also Towery v. Ryan, 673 F.3d 933, 943 (9th Cir. 2012) (finding

5   that the petitioner did not establish "extraordinary circumstances" based on his counsel's

6   failure to raise a certain claim: "In contrast to Holland, however, Towery makes no claim

7   that [counsel] performed incompetent legal work, failed to communicate with him,

8   refused to implement his reasonable requests or failed to keep him informed of key

9   developments in his case.  Nor, in contrast to Maples, did [counsel] cease serving as

10  Towery's agent in any meaningful sense of that word or leave Towery without any

11  functioning attorney of record.  Towery's claim of abandonment is therefore

12  unpersuasive.").[31]

13          Because petitioner is entitled to equitable tolling of the statute of limitations, this

14  Court finds that the Petition should not be dismissed as untimely.**[32]**

15

16          [31]     Respondent cites several cases -- Maples, supra; Cadet v. Florida Dept. of
    Corrections, 742 F.3d 473, 481-82 (11th Cir. 2014) ("[Counsel's] negligence in missing
17  the filing deadline does not mean that he abandoned or effectively abandoned [the
    petitioner].  Negligence, however gross, is not the same as abandonment."); Kingdom v.
18  Lamerque, 392 Fed.Appx. 520, 522 (9th Cir. 2010) ("[T]he district court correctly
    determined that [the petitioner's] evidence erred *not* by abandoning his client, but simply
19  by misunderstanding the filing deadline under the . . . AEDPA[.])"; Rivas v. Fischer, 687
    F.3d 514, 538 (2d Cir. 2012) ("[I]n order to rise to the level necessary to constitute an
20  'extraordinary circumstance,' for purpose of tolling § 2254's limitation period, attorney
    negligence must be so egregious as to amount to an effective abandonment of the
21  attorney client relationship."); Towery v. Ryan, supra, 673 F.3d at 941 (applying attorney
    abandonment standard to petitioner's claim that "extraordinary circumstances"
22  constituted exception to bar on second or successive petition); Mackey v. Hoffman, 682
    F.3d 1247, 1251, 1253 (holding that, under Maples, counsel's failure to timely file a
23  notice of appeal may constitute "extraordinary circumstances" based on abandonment) --
    for the proposition that a counsel's abandonment of his client, rather than counsel's
24  negligence with respect to the statute of limitations, is necessary for finding
    "extraordinary circumstances."  (See Return at 4-5).  As discussed herein, the Court has
25  found that Ms. Bassis was far more than negligent with respect to the statute of
    limitations; she in effect abandoned petitioner.
26
          [32]     Parties may file Objections within thirty days of the issuance of these
27  Findings and Conclusion.  Assuming any Objections to these Findings and Conclusion do
    not cause the Court to change its view regarding petitioner's entitlement to equitable
28                                                                        (continued...)

DATED:  October 9, 2014

_____
STEPHEN J. HILLMAN
UNITED STATES MAGISTRATE JUDGE

---

[32] (...continued)
tolling, these Findings and Conclusion will be incorporated into the Court's Report and Recommendation addressing the merits of the claims alleged in the Petition.

35